### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH S. BUCCI d/b/a ENVIRONMENTAL EQUIPMENT & SERVICE COMPANY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 08-1478 |
| | : | |
| WACHOVIA BANK, N.A., | : | |
| | : | |
| Defendant. | : | |
| | : | |

### MEMORANDUM AND ORDER

**Brody, J.**                                                 **December 23, 2008**

On February 25, 2008, Plaintiff, Ralph S. Bucci ("Bucci"), doing business as

Environmental Equipment & Service Company ("EES"), filed a complaint in the Delaware

County Court of Common Pleas against Defendant Wachovia Bank, N.A. ("Wachovia").  On

March 27, 2008, Wachovia removed the case to this court.[1]  Bucci's complaint alleges that

Wachovia was complicit in an embezzlement scheme perpetrated by one of EES's employees

and should be held liable for: negligence (Count I), negligent misrepresentation (Count II),

constructive fraud (Count III), fraud (Count IV), conversion (Count V), breach of contract (Count

VI), breach of duty of good faith and fair dealing (Count VII), violations of Pennsylvania's

Commercial Code sections 3307 (Count VIII), 3406 (Count IX), 3420 (Count X), 4401 (Count

XI), and 4406 (Count XII), aiding and abetting (Count XIII), and a violation of Pennsylvania's

---

[1]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332.  Bucci is a citizen of Pennsylvania.  Wachovia is a citizen of North Carolina.  The amount in controversy exceeds $75,000.

Uniform Fiduciaries Act, 7 P.S. § 6351 et seq. (Count XIV).[2]   On April 22, 2008, Wachovia

filed a motion to dismiss the complaint pursuant to Rule 12(b)(6).  For the reasons stated below,

Wachovia's motion is granted in part and denied in part.

## I.    Factual Background

Bucci formed EES as a sole proprietorship in 1973.  EES distributes water and sewage

treatment equipment to municipalities.  Compl. at ¶ 2.  In 1980, Bucci hired Elizabeth

Greenawalt ("Greenawalt") to perform bookkeeping and secretarial duties for the company.  As

part of her responsibilities Greenawalt took weekly trips to the Linwood branch of Wachovia in

Linwood, Pennsylvania (the "Linwood Wachovia") to conduct financial activities on behalf of

EES, such as depositing checks.[3]  Compl. at ¶¶ 10-12, 17.  Greenawalt was also responsible for

preparing checks payable to creditors for Bucci to review and sign and she maintained the

company's financial records.  Compl. at ¶ 12.

Greenawalt worked faithfully for EES for 13 years, until late 1997 when Greenawalt

allegedly began stealing money from EES by altering checks and altering the company's

financial records to conceal the fraud.[4]  Compl. at ¶ 19.  Bucci claims that from 1998 through

---

[2]The Complaint numbers two counts as XIII.  The violation of Pennsylvania's Uniform
Fiduciaries Act Count is correctly numbered herein as Count XIV.

[3] EES began banking at the Linwood Wachovia in 1985, after EES relocated from
Glenolden to Marcus Hook, Pennsylvania.  The Linwood Wachovia closed in December 2006.
Compl. at ¶ 13.

[4]Bucci alleges that Greenawalt altered the checks by erasing the name of the payee after
Bucci had signed the check and writing in her own name, or making the check out to "Cash."
Compl. at ¶ 19.  When the check was returned with the monthly statement, she would again erase
the name of the payee and insert the name of the creditor that had appeared on the check when
Bucci had signed it.  Id.  If she had endorsed the check at the bank, Greenawalt would erase,
smudge or tear the endorsement on the returned check.  Id.

2006, Greenawalt wrongfully negotiated over $925,000.00 in altered checks from EES, all of which were cashed or deposited at the Linwood Wachovia.  Compl. at ¶ 23.  Bucci began to suspect Greenawalt was defrauding EES on October 31, 2006.  On November 1, 2006, Bucci advised Wachovia's branch manger that Greenawalt had been cashing checks without his authorization to do so.  Compl. at ¶ 36.  On November 2, 2006, Bucci confronted Greenawalt and she admitted to stealing money by altering checks.  Compl. at ¶ 39.  Greenawalt is currently facing criminal prosecution in Delaware County, Pennsylvania.  Compl. at ¶ 39.  Wachovia disclaimed liability for any of Bucci's losses in a letter dated August 29, 2007.  Compl. at ¶ 41. On February 25, 2008, Bucci filed suit against Wachovia alleging that, by permitting Greenawalt to improperly cash hundreds of checks containing obvious alterations, Wachovia was either fraudulently or negligently complicit in Greenawalt's scheme.  Compl. at ¶¶ 23-25.

## II.     Fed. R. Civ. P. 12(b)(6) Legal Standard

Wachovia moves for dismissal of the complaint pursuant to Fed. Rule Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, the claimant must "set forth sufficient information to outline the elements of the claims or to permit inferences to be drawn that these elements exist." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  This means the plaintiff must plead facts sufficient to "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).  The factual claims must be accepted as true and viewed in the light most favorable to the plaintiff, but a court is not bound to accept as true unsupported conclusions or conclusory allegations. In re Tower Air, Inc., 416 F.3d 229, 236 (3d Cir. 2005); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  A motion to dismiss should be granted under Rule 12(b)(6) if the moving party has established that the plaintiff would not be

entitled to relief under any reasonable reading of the complaint.  Brown v. Card Service Center, 464 F.3d 450, 452 (3d Cir. 2006).

**III.    Discussion**

    A.    Displacement of Common Law Claims by the Pennsylvania Commercial Code

    Wachovia first contends that Bucci's common law claims for negligence (Count I), conversion (Count V), breach of contract (Count VI), and breach of the covenant of good faith and fair dealing (Count VII) should each be dismissed as displaced by Bucci's claims under Articles 3 and 4 of the Pennsylvania Commercial Code, 13 Pa. Cons.Stat.Ann. § 1101 et seq. The Pennsylvania Commercial Code (the "PCC" or the "Code") is Pennsylvania's version of the Uniform Commercial Code (the "UCC").  Article 3 of the Code regulates negotiable instruments, including checks and the check collection process.  See 13 Pa. C.S.A. § 3102.  Article 4 defines the rights between parties with respect to bank deposits and collections involving banks located in Pennsylvania.  See 13 Pa. C.S.A. § 4102(b).  When and whether common law claims are displaced by the Code is covered in section 1103 of the Code.  Section 1103 explains that:

> Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

13 Pa. C.S.A. § 1103.  The Third Circuit in New Jersey Bank N.A. v. Bradford Sec. Operations, Inc., read this section to mean that there is a "presumption" that "supplementary principles of law. . . continue to operate in conjunction with the UCC" unless a provision of the UCC provides a "comprehensive remedy for parties to a transaction." 690 F.2d 339, 346-47 (3d. Cir. 1982).  A comprehensive remedy is one that would be rendered meaningless by allowance of common law

claims.  Id. at 346 (citing Brannon v. First Nat. Bank of Atlanta, 137 Ga. App. 275, 278 (1976)).

In addition, the UCC will displace the common law where "reliance on the common law would

thwart the purposes of the Code."[5]  Id.  In sum, parallel Code and common law claims may be

maintained except in circumstances where (1) the Code provides a comprehensive remedial

scheme, and (2) reliance on the common law would undermine the purposes of the Code.  Id.;

See also Yahn & McDonnell, Inc. v. Farmers Bank of the State of Delaware, 708 F.2d 104, 109

(3d Cir. 1983) (following New Jersey Bank); Citizens Bank of Pennsylvania v. Chevy Chase

Bank, No. 03-5208, 2004 WL 875499, at *2 (E.D.Pa. 2004) (applying principles set forth in New

Jersey Bank when dismissing common law conversion claim); Progressive Casualty Ins. Co. v.

PNC, No. 98-6480, 1999 WL 557292, at *7 (E.D.Pa. 1999) (employing a two-part inquiry based

on New Jersey Bank and Yahn).

   Consistent with the analysis set forth below, I will grant Wachovia's motion to dismiss

Bucci's common law conversion claim (Count V) and I will deny without prejudice Wachovia's

motion to dismiss Bucci's negligence, negligent misrepresentation, breach of contract, and

breach of duty of good faith and fair dealing claims (Counts I, II, VI, and VII).

   1.   Conversion (Count V)

   Under Pennsylvania law, common law conversion requires the "deprivation of another's

right of property, or use or possession of a chattel, or other interference therewith, without the

owner's consent and without legal justification."  Universal Premium Acceptance Corp. v. York

Bank & Trust Co., 69 F.3d 695, 704 (3d. Cir. 1995).  Bucci claims that Wachovia committed

---

[5]The Third Circuit has described the purposes of the Code as "simplifying and clarifying
the law governing commercial transactions, fostering the expansion of commercial practices, and
standardizing the laws of the various jurisdictions."  New Jersey Bank, 690 F.2d at 345.

conversion by unlawfully negotiating checks in accordance with Greenawalt's instructions, depriving Bucci of the use of his funds.  Compl. at ¶ 68.  Bucci also claims that Wachovia violated section 3420 of the Pennsylvania Commercial Code, 13 Pa. C.S.A. § 3420 ("section 3420"), entitled "Conversion of Instrument."  Wachovia contends that Bucci cannot maintain parallel Code and common law claims for conversion because section 3420 of the Code provides a comprehensive remedial scheme which displaces plaintiff's common law conversion claims.  Section 3420 of the Pennsylvania Commercial Code provides that:

> The law applicable to conversion of personal property applies to instruments.  An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.  An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.

13 Pa. C.S.A. § 3420(a).  The first sentence of this section makes clear that the law applicable to the conversion of personal property (i.e. common law) is intended to apply under this statute to instruments.  Thus, an action based on the deprivation of property, where that property is an instrument, is subsumed and displaced by section 3420.  See Citizens Bank of Pennsylvania v. Chevy Chase Bank, 2004 WL 875499 (E.D.Pa. Sept. 15, 2003) (applying principles of New Jersey Bank in finding that the plaintiff's common law claim for conversion was barred by the UCC); Gress v. PNC Bank, 100 F.Supp.2d 289 (E.D. Pa. 2000) (predicting that Pennsylvania courts would hold that common law claims for conversion, "insofar as they relate to conversion of a negotiable instrument," would be displaced by section 3420); Sebastian v. D&S Express, Inc., 61 F.Supp.2d 386, 390 (D.N.J. 1999) ("By its plain language § 3420 codifies, and subsumes

a cause of action for conversion based on the facts of this case" which involve a bank accused of cashing checks made out to fictitious payees).

Permitting a parallel common law conversion claim where recovery is specifically provided for by the Code would render the Code meaningless. Furthermore, this is a situation where allowing an action at common law would thwart the purposes of the Code. See e.g., Citizens Bank of Pennsylvania v. Chevy Chase Bank, 2004 WL 875499 (E.D.Pa. Sept. 15, 2003) (allowing plaintiff to bring parallel common law conversion claim, "would thwart the purposes of the UCC, one of which is to standardize the commercial laws of the various jurisdictions"). I therefore conclude that Bucci's common law claim for conversion (Count V) is dismissed as displaced by 13 Pa. C.S.A. § 3420.

2.  Negligence (Count I), Breach of Contract (Count V), and Breach of the Duty of Good Faith and Fair Dealing (Count VI)

To make its case for displacement, Wachovia must first set forth the particular provision or provisions of the PCC that it believes to supplant Bucci's common law claims. In its motion to dismiss, Wachovia contends that 13 Pa. C.S.A. § 4406 ("section 4406") establishes the "applicability (or non-applicability) of issues of care and/or negligence, good faith conduct, and breach of contract issues." Motion to Dismiss at 8. Section 4406 describes the duties of the customer and bank with respect to commercial transactions involving unauthorized signatures or altered instruments. Bucci's allegations involve a fraudulent scheme that involved altered checked, checks improperly made out to "Cash," checks deposited into business and personal accounts, all of which took place at the same branch of the same bank over a period spanning nearly a decade. At this stage of the litigation it is not apparent whether the totality of the

allegations, which I must construe in favor of the plaintiff, are fully redressable by section 4406,

or any other section of the Code.[6]  Wachovia has failed to fully develop its displacement

argument as to Bucci's common law claims for negligence,[7] breach of contract, and breach of

duty of good faith and fair dealing.  While Wachovia may ultimately prevail on this issue at a

later point in the litigation, at this stage I decline to hold that plaintiff's claims for negligence,

breach of contract, and breach of the duty of good faith and fair dealing are displaced by the

Pennsylvania Commercial Code.

B.    Plaintiff's Claim Under 13 Pa. C.S.A. § 3420 is Dismissed (Count X)

Wachovia contends that Bucci's claim for conversion of an instrument under 13 Pa.

C.S.A. § 3420 ("section 3420") must be dismissed because the statute only applies to forged

instruments and there is no allegation that any checks were forged.  Wachovia is incorrect that

---

[6]Wachovia also contends that 13 Pa. C.S.A. § 3307 provides a comprehensive "context for the analysis of the impact of Greenawalt's status as a fiduciary in the transactions at issue in this case."  Motion to Dismiss at 9.  However, the displacement analysis is a careful one, and without more, Wachovia's assertion cannot carry its argument on a motion to dismiss.

[7]With respect to Bucci's claim for negligence, Wachovia argues that we should follow the district court in Gress v. PNC Bank, 100 F.Supp.2d 289 (E.D. Pa. 2000) and dismiss Bucci's negligence claims as displaced by section 3420 of the Code.  Motion to Dismiss at 6-7.  Gress held that section 3420 of the PCC displaced the plaintiff's common law negligence claims because they arose out of the same set of facts as the plaintiff's conversion claim for wrongful payment of a negotiable instrument.  However, it is well established in the Third Circuit (and Gress does not hold otherwise) that under some fact patterns, a plaintiff may maintain a common law claim for negligence parallel to a claim under the PCC.  See e.g. New Jersey Bank, 690 F.2d 339 at 346-47 (allowing a parallel common law negligence claim in an action involving forged stock certificates); Universal Premium v. York Bank & Trust Co., 69 F.3d 695, 704 (3d Cir. 1995) (permitting common law negligence claim where the so-called "fictitious payee" provision, section 3405 did not apply).  Thus the displacement analysis with respect to negligence is fact-specific, and it is not clear at this early stage of the litigation whether plaintiff's claims for negligence should be displaced by section 3420 of the Code.

section 3420 only applies to forged instruments.[8]  However, I grant Wachovia's motion to

dismiss Count X on the ground that Bucci is an "issuer" within the meaning of 13 Pa. C.S.A. §

3420 and issuers are not entitled to bring claims for conversion under 13 Pa. C.S.A. § 3420(a).

Section 3420(a) is clear that "[a]n action for conversion of an instrument may *not* be

brought by the issuer or acceptor of the instrument."  13 Pa. C.S.A. § 3420(a) (emphasis added).

An "issuer" is defined as the "maker or drawer of an instrument."  13 Pa. C.S.A. § 3105.  A

"drawer" is the "person who signs or is identified in a draft as a person ordering payment."  13 Pa

C.S.A. § 3103.  Bucci is the individual person who signed the checks at issue in this case, as the

sole proprietor of EES.  EES is ultimately the "corporate person" that is considered to be the

drawer and issuer of the disputed checks in this case.  Compl. at ¶¶ 19-22.  See Sebastian, 61 F.

Supp. 2d at 391 ("This Court...considers the corporate person, D & S Express, Inc., to be the

drawer and issuer of the disputed checks.").  As a sole proprietorship, EES has no existence

separate and apart from its individual owner.  Standard Fire Ins. Co. v. Arnold, No. 01-1467,

2002 WL 226341, at *1 (3d. Cir. Feb. 13, 2002) (not precedential); Borah v. Monumental Life

Ins. Co., No. 04-3617, 2005 WL 351040, at *2 (E.D. Pa. 2005) ("Under Pennsylvania law, a sole

proprietorship is not legally separate from its owner.").  Bucci, doing business at EES, is the

drawer/issuer in this case.  A drawer/issuer cannot maintain a conversion action under 13 Pa.

C.S.A. § 3420(a).  I therefore dismiss Count X of the complaint for failure to state a claim upon

---

[8]Under Pennsylvania law, an unauthorized endorsement is equivalent to a forged
instrument.  Springfield Tp. v. Mellon PSFS Bank, 889 A.2d 1184, 1188 (Pa. 2005); Manfredi v.
Dauphin Deposit Bank, 697 A.2d 1025, 1028 (Pa. Super. 1997) ("Case law establishes that
where a check is paid or cashed on an unauthorized or forged endorsement, the bank is liable for
conversion."); See also Levy v. First Pennsylvania Bank N.A., 487 A.2d 857, 860 (Pa. Super.
1985) (holding that "an unauthorized signature is the same as forgery for purposes of an action
for conversion" under the Pennsylvania Commercial Code) (overruled on other grounds).

which relief may be granted.

      C.    <u>Plaintiff has Failed to State a Claim for Fraud (Count IV), Constructive Fraud</u>
             <u>(Count III), and Negligent Misrepresentation (Count II)</u>

Bucci makes allegations against Wachovia for fraud and constructive fraud.  Wachovia moves for dismissal of these claims for failure to adequately plead those causes of action under Federal Rule of Civil Procedure 9(b).  When alleging fraud or mistake, plaintiffs are subject to the heightened pleading requirements of Rule 9(b).  Rule 9(b) requires plaintiffs to "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged."  <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004).  Allegations of date, time, or place would fulfill these requirements, but plaintiffs may use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984).

      1.    <u>Fraud</u>

In Pennsylvania, a prima facie case of fraud requires: (1) a false representation, (2) made with knowledge of its falsity or recklessness as to whether it is true or false, (4) which is intended to make the receiver act, (5) justifiable reliance on the misrepresentation, and (6) damages to the receiver as a proximate result of the reliance.  <u>See</u>  <u>Kutner Buick Inc.</u>, 868 F.2d 614, 620 (3d Cir. 1989); <u>Complaint of Bankers Trust Co.</u>, 752 F.2d 874, 883 (3d Cir. 1984).  Bucci does not set forth any allegations of misrepresentations that were made to him by Wachovia regarding Greenawalt's banking activities.  However, to be actionable, a false representation need not be in the form of a positive assertion but can be "any artifice by which a person is deceived to his

disadvantage [including]...concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment." Wilson v. Donegal Mut. Ins., 598 A.2d 1310, 1315-16 (Pa. Super. 1991). Wachovia's alleged fraudulent conduct was failing to advise Bucci that his employee was routinely cashing company checks and taking some or all of the proceeds, and intentionally remaining silent so that Bucci was led to believe that the checks issued by him were being handled properly by the bank. Thus, Bucci's fraud claim is one of fraud by omission.

A fraud claim based on intentional non-disclosure (i.e. omission) has the same elements as fraud, except that "an omission is actionable as fraud only where there is an independent duty to disclose the omitted information." Duquesne Light Co. v. Westinghouse Electric Corp., 66 F. 3d 604, 612 (3d Cir. 1995) (holding that "Pennsylvania courts have adopted the duty to speak requirement" in fraud by omission cases); See also Chiarella v. U.S., 445 U.S. 222, 228 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.").

The duty to speak arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." Chiarella, 445 U.S. at 228 (holding that purchaser of stock who had non-public information relative to that stock had no duty to disclose it to other stockholders). A fiduciary relationship requires a showing that there was a relationship involving "trust and confidence" between the parties. In re Cara Corp., 148 B.R. 760, 772 (E.D.Pa. 1992). "Further, there must be a confidence on the part of one party and a domination and influence on the part of the other, and both parties must have acknowledged such a fiduciary relationship." Id. Under Third Circuit

11

law, the confidential or fiduciary relationship that triggers the duty to speak arises in limited circumstances such as where there is an agreement between the parties; as a result of one party's reliance on the other's representations, if one party is the only source of information to the other party or the problems are not discoverable by other reasonable means; when disclosure is necessary to prevent an ambiguous or partial statement from being misleading; where subsequently acquired knowledge makes a previous representation false; or where the undisclosed fact is basic to the transaction.  Duquesne, 66 F. 3d at 611; City of Rome v. Glanton, 958 F. Supp. 1026, 1038 (E.D. Pa. 1997); See also Restatement of Torts (Second) § 551.  The duty to speak does not arise where "both the plaintiff and defendant were sophisticated business entities, entrusted with equal knowledge of the facts."  Duquesne, 66 F. 3d at 612.

Bucci has failed to allege that there was any relationship between the parties that would form the basis for any duty whatsoever of Wachovia to disclose information to him about Greenawalt's activities.  The relationship between a customer and a bank does not, as a matter of law, give rise to a duty to speak.  See e.g., Temp-Way Corp. v. Continental Bank, 139 B.R. 299 (E.D. Pa. 1992) (A lender "does not ordinarily owe a fiduciary duty to a borrower."); In re The Cara Corporation, 148 B.R. at 772 ("Under Pennsylvania law, a lender's failure to disclose information about one of its customers is generally actionable only when there is an independent duty on the lender to in fact disclose same."); Waye v. Commonwealth Bank, 846 F. Supp. 321, 326 (M.D. Pa. 1994) (holding that banks have no fiduciary obligation to refrain from reporting suspected illegal activity on the part of their customers); Drapeau v. Joy Technologies, Inc., 670 A.2d 165, 172 (Pa. Super. 1996) (holding that a business association "may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his

affairs to the other.").  Bucci makes no allegation that Wachovia had substantial control over the business affairs of EES, or there was any agreement between the parties, or that Bucci relied on the omissions where Wachovia was the only source of information or where Greenawalt's activities were not discoverable by other reasonable means, or any other set of facts or circumstances that would give rise to Wachovia's liability for failure to speak.  Bucci's claim for fraud (Count IV) is therefore dismissed for failure to state a claim.  See Daniel Boone Area School District v. Lehman Bros., Inc., 187 F. Supp. 2d 400 (W.D. Pa. 2002) (dismissing plaintiff's fraud by omission claim where plaintiff failed to allege a confidential or fiduciary relationship existed between the parties).

### 2.    Constructive Fraud

In Pennsylvania, a constructive fraud claim requires a false statement (or omission) on which the other party acts to his injury, without the element of dishonest intent.  United States v. Whyel, 19 F.2d 260, 263 (W.D. Pa. 1927); Charleroi Lumber v. School District, 6 A.2d 88, 91 (Pa. 1939) (defining constructive fraud as "a breach of duty which has a tendency to deceive others and operate to their injury, even though there is no vicious intent").  As with fraud, to state a claim for constructive fraud, Bucci must be able to allege a relationship between the parties that would trigger Wachovia's duty to speak.  See Alvarez v. Ins. Co. of North America, No 07-1102, 2008 WL 647784, at *4 (3d Cir. 2008) ("In the absence of a confidential relationship, the constructive fraud claim must fail.").  Bucci has made no such allegations.  Therefore, I will dismiss Bucci's constructive fraud claim (Count III).

### 3.    Negligent Misrepresentation

Wachovia contends that if Bucci's fraud by omission claim fails, his negligent

13

misrepresentation claim must fail as well.  Negligent misrepresentation requires proof of (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.  Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999).  The distinguishing factors between fraudulent misrepresentation and negligent misrepresentation are that, "as to negligent misrepresentation, the state of mind of the actor to intentionally harm the plaintiff need not be proven and the plaintiff must arguable meet a lesser standard of proof."  In re Cara Corp., 148 B.R. at 771.  Moreover, there must be an existence of a duty owed by one party to another.  Bortz, 729 A.2d at 560.  Bucci's only allegation with respect to the relationship between Bucci and Wachovia is simply to state that Wachovia had a duty to advise Bucci of Greenawalt's presentment of altered checks and other suspicious banking activities.  Compl. at ¶ 50.  On a motion to dismiss, I must construe the complaint in favor of the defendant, but I am not required to accept as true a plaintiff's bald assertions or legal conclusions.  See Morse, 132 F.3d at 906.  As discussed above, the existence of a fiduciary relationship requires a demonstration of a relationship involving "trust and confidence" between the parties, or undue influence of one party over the affairs of the other, and an acknowledgment of a fiduciary relationship.  Bucci has not alleged facts sufficient for me to credit his conclusory assertion that Wachovia had a duty to advise Bucci under these circumstances.  Therefore, Bucci's negligent misrepresentation claim (Count II) is dismissed for failure to state a claim.

      D.      <u>Plaintiff's Claim Under 13 Pa. C.S.A. § 4406 (Count XII) is Not Precluded</u>

Bucci claims that Wachovia failed to exercise ordinary care in paying the unauthorized

14

EES checks in violation of 13 Pa. C.S.A. § 4406 ("section 4406").  Wachovia argues that Bucci's

claims under section 4406 are barred pursuant to the limitations period set forth in subsection (f)

of that statute.  Wachovia's argument is essentially a statute of limitations defense.[9]  A statute of

limitations defense may be asserted on a motion to dismiss only where it is clear from the face of

the complaint that the claims are time-barred.  Rycoline Products, Inc. v. C&W Unlimited, 109

F.3d 883, 886 (3d Cir. 1997).  If the bar is not apparent on the face of the complaint, then it may

not afford the basis for a dismissal of the complaint under Rule 12(b)(6).  Bethel v. Jendoco

Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

Section 4406 allocates responsibility between a bank and its customers with respect to

discovering and reporting unauthorized signatures or alterations.  See 13 Pa. C.S.A. § 4406(a)-

(f).  Section 4406(f) requires that customers assert unauthorized signatures against the bank

within one year after the bank has provided them with the requisite information or they forfeit

their claims under this section:

> [W]ithout regard to care or lack of care of either the customer or the bank, a customer
> who does not within one year after the statement or items are made available to the
> customer (subsection (a)) discover and report the customer's unauthorized signature
> on or any alteration on the item is precluded from asserting against the bank the
> unauthorized signature or alteration.

13 Pa. C.S.A. § 4406(f).  In practice, this section means that if the customer notifies the bank

within one year of discovering an unauthorized signature or alteration, then the customer

preserves his or her right to bring a suit within the applicable statute of limitations period

---

[9]Section 4406(f) is not a statute of limitations per se, but rather "a precedent to an action
which, unlike a statute of limitations, cannot be tolled."  Euro Motors, Inc. v. Southwest
Financial Bank and Trust Co., 696 N.E.2d 711, 716 (Ill. App. 1st Dist. 1998); In re McMullen
Oil Co., 251 B.R. 558, 577 (Bankr. C.D. Cal. 2000) ("Section 4406 is not per se a statute of
limitations, but instead is an issue-preclusion statute.").

applicable to claims under section 4406(f) (3 years).  If the customer does not notify the bank within one year, then the customer loses his or her right to bring suit on those claims regardless of the otherwise applicable statute of limitations period.  However, to trigger the limitations period in section 4406(f), Wachovia must first have provided Bucci with information "sufficient to allow the customer reasonably to identify the items paid" pursuant to subsection (a). 13 Pa. C.S.A. § 4406(a).  If a customer receives sufficient information under section 4406(a), then section 4406(c) sets forth the duties of the customer to examine those records and promptly notify the bank of irregularities. 13 Pa. C.S.A. § 4406(c).  A customer's duties under subsection (c) are triggered only when sufficient account information is provided by the bank pursuant to subsection (a).  See 13 Pa. C.S.A. § 4406, Revised Official Comment 1.

There is a genuine issue of material fact as to whether the requisite information was supplied by Wachovia to Bucci.  It is clear from the face of the complaint that Wachovia provided some account statements to Bucci.  Compl. at ¶ 19.  However, it is not clear whether the account statements included sufficient information to allow Bucci to identify the items paid. Bucci claims that he began "retrieving copies of EES account statements and checks" immediately after learning of Greenawalt's fraud on October 31, 2006.  Compl. at ¶ 37.  Thus, we can be certain that Bucci had access to the requisite information as of October 31, 2006, but with respect to the time period prior to Bucci's discovery of the fraud, it is unclear from the face of the complaint what statements were provided, when they were provided, and what information they contained.  This information is crucial to a determination of whether all or part of Bucci's claims are time-barred pursuant to 13 Pa. C.S.A. § 4406(f).  Because it is not clear from the face of the complaint whether this claim is barred by the statute of limitations, I cannot dismiss or

limit this claim on a Rule 12(b)(6) motion to dismiss.

   E. <u>Counts VIII, IX and XI Are Partially Barred By the Statute of Limitations</u>

   Wachovia contends that Bucci's claims under sections 3307 (Count VIII), 3406 (Count

IX) and 4401 (Count XI) of the PCC should be limited to checks cashed after February 25, 2005

by strict application of the statute of limitations set forth in 13 Pa. C.S.A. §§ 3118(g) and 4111,

which are not subject to the discovery rule.  As discussed above, a statute of limitations defense

may be asserted on a Rule 12(b)(6) motion to dismiss where it is clear from the face of the

complaint that the claims are time-barred.  <u>Rycoline Products, Inc. v. C&W Unlimited</u>, 109 F.3d

883, 886 (3d Cir. 1997).  With respect to Counts VIII, IX and XI, I find that Bucci's claims are

partially barred by operation of the statute of limitations.

   13 Pa. C.S.A. § 3406 ("section 3406"), entitled "Negligence Contributing to Forged

Signature or Alternation of Instrument," provides for the allocation of risk between an individual

asserting an alteration or forgery against a bank who pays the instrument in good faith.  13 Pa.

C.S.A. § 3307 ("section 3307"), entitled "Notice of Breach of Fiduciary Duty," determines when

a bank has notice of a breach of fiduciary duty.  <u>See</u> 13 Pa. C.S.A. § 3307, Comment 1.  Both of

these claims arise under Article 3 of the PCC and are subject to a three-year statute of limitations:

> [A]n action (1) for conversion of an instrument, for money had and received or like
> action based on conversion; (2) for breach of warranty; or (3) to enforce an
> obligation, duty or right arising under Article 3 and not otherwise governed by this
> section must be commenced within three years after the cause of action accrues.

13 Pa. C.S.A. § 3118(g).  13 Pa. C.S.A. § 4401 ("section 4401"), entitled "When Bank May

Charge Account of Customer," provides rules for determining when a bank may charge against

the account of a customer.  Section 4401 arises under Article 4 of the PCC and is also subject to

a three year statute of limitations: "An action to enforce an obligation, duty or right arising under this division must be commenced within three years after the cause of action accrues." 13 Pa. C.S.A. § 4111.

In a cause of action involving conversion of negotiable instruments, the cause of action accrues and the statute begins to run at the moment in time when the instrument is negotiated. See Menichini v. Grant, 995 F.2d 1224, 1231 (3d Cir. 1993); Estate of Hollywood v. First Nat'l Bank of Palmerton, 859 A.2d 492, 482-83 (Pa. Super. Ct. 2004) ("When the property converted is a negotiable instrument, the damage is done, and the tort is complete when the instrument is negotiated, regardless of the plaintiff's ignorance of the conversion."). Wachovia is correct that the "discovery rule" is not applicable to toll the statute of limitations for claims brought under the PCC.[10] See e.g., Menichini v. Grant, 995 F.2d 1224, 1231 (3d Cir. 1993) ("[T]he tide of case law runs strongly against" application of the discovery rule in cases involving commercial transactions); Estate of Hollywood, 859 A.2d at 483 (holding that the "commercial and social interests of negotiability, finality, and uniformity" militate in favor of rejecting the discovery rule in case involving claim under the Code). However, the statute of limitations in commercial transactions may be tolled if the defendant is found to be guilty of fraudulent concealment. See Menichini, 995 F.2d at 1231 (3d Cir. 1993) (holding that the statute of limitation was not tolled absent evidence that the defendant bank engaged in fraudulent concealment); Estate of Hollywood, 859 A.2d at 482, (holding that "in the absence of fraudulent concealment," claims under Articles 3 and 4 of the PCC accrue and the statute begins to run when the instrument is

_____

[10]The "discovery rule" provides for equitable tolling of a statute of limitations in cases where a plaintiff, despite the exercise of due diligence, is unable to know of the existence of the injury and its cause. Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991).

negotiated); See also Calex Express, Inc. v. Bank of America, 401 F.Supp.2d 407 (M.D.Pa.

2005); Lictenstein v. Kidder, Peabody & Co., Inc., 777 F. Supp. 423, 427 (W.D. Pa. 1991).

Bucci argues that because he has alleged fraud in his complaint, the statute of limitations

may be tolled and therefore it would be premature to dismiss these claims on statute of

limitations grounds.  To toll the statute of limitations, fraudulent concealment must be

demonstrated by an "affirmative independent act of concealment upon which the plaintiff[ ]

justifiably relied."  Kingston Coal Co. v. Felton Min. Co., Inc. 690 A.2d 284 (Pa. Super. 1997).

See also Glaziers and Glass Workers Union Local No. 252 Annuity Fund v. Janney Montgomery

Scott, Inc., 155 F.R.D. 97, 101 (E.D. Pa. 1994) (applying statute of limitations where plaintiffs

failed to allege an affirmative act of concealment that would have misled or diverted plaintiffs

from discovering the alleged fraud).  While fraud and constructive fraud may be established by

omission, "silence in the absence of a duty to speak cannot suffice to prove fraudulent

concealment."  Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 433 (Pa. Super. 2003).

Bucci's fraud claims are based on omissions and the alleged failure of Wachovia to disclose

Greenawalt's banking activities to Bucci.[11]  Bucci has not alleged any affirmative conduct on the

part of Wachovia or any of its employees that would demonstrate the required independent act of

concealment.  Therefore, the three year statue of limitations set forth in 13 Pa. C.S.A. §§ 3118(g)

and 4111 cannot be tolled.  Bucci filed his complaint on February 25, 2008.  Pursuant to the

statute of limitations, Bucci's claims under Code sections 3307, 3406 and 4401 are dismissed to

the extent they are based on checks negotiated before February 25, 2005, three years before the

_____

[11]As discussed, supra, Bucci failed to articulate with particularity his fraud and
constructive fraud claims.

Complaint was filed.

**IV.     Conclusion**

For the reasons stated above, I will grant in part and deny in part Wachovia's motion to dismiss.  Bucci's common law claims for conversion (Counts V and X) are dismissed as a matter of law.  Bucci's claims for negligent misrepresentation, constructive fraud, and fraud (Counts II, III and IV) are dismissed for failure to state a claim.  Bucci's claims under 13 Pa. C.S.A. §§ 3307, 3406 and 4401 (Counts VIII, IX, and XI) are dismissed to the extent that they are barred by the applicable statute of limitations.  With respect to the remaining counts, Wachovia's motion to dismiss is denied.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH S. BUCCI d/b/a | : | |
| ENVIRONMENTAL EQUIPMENT & | : | CIVIL ACTION |
| SERVICE COMPANY, | : | |
|     Plaintiff. | : | NO. 08-1478 |
| | : | |
|        v. | : | |
| | : | |
| WACHOVIA BANK, N.A., | | |
|     Defendant. | | |

## ORDER

**AND NOW**, this _____ day of December, 2008, it is **ORDERED** that, upon consideration of the Motion of Defendant Wachovia Bank N.A. to Dismiss Certain Counts of Plaintiff's Complaint (Doc. #6) and Plaintiff's reply thereto, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

Defendant's Motion to Dismiss is **GRANTED** as to:

1. Plaintiff's claim for conversion (Count V) as displaced by the Pennsylvania Commercial Code.

2. Plaintiff's claims for negligent misrepresentation (Count II), constructive fraud (Count III), fraud (Count IV) and violation of 13 Pa. C.S.A. § 3420 (Count X) for failure to state a claim upon which relief can be granted.

3. Plaintiff's claims under 13 Pa. C.S.A. § 3307 (Count VIII), 13 Pa. C.S.A. § 3406 (Count IX), and 13 Pa. C.S.A. § 4401 (Count XI) as barred by the governing statute of limitations

with respect to checks processed by Wachovia before February 25, 2005.[12]

Defendant's Motion to Dismiss is **DENIED** without prejudice as to:

1.  Plaintiff's claims for negligence (Count I), breach of contract (Count VI), breach of duty of good faith and fair dealing (Count VII), violation of 13 Pa. C.S.A. § 4406 (Count XII), aiding and abetting (Count XIII), and violation of 7 P.S. § 6351 <u>et seq</u>. (Count XIV).[13]


     S/ANITA B. BRODY

     ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:         Copies **MAILED** on _____ to:

---

[12]Claims brought under 13 Pa. C.S.A. §§ 3307, 3406 and 4401 that are based on checks negotiated after February 25, 2005 are within the statute of limitations and are not dismissed.

[13] The Complaint numbers two counts as XIII.  The violation of Pennsylvania's Uniform Fiduciaries Act Count is correctly numbered herein as Count XIV.