## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH S. BUCCI d/b/a ENVIRONMENTAL EQUIPMENT & SERVICE COMPANY, | : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | No. 08-1478 |
| WACHOVIA BANK, N.A., | : : | |
| Defendant. | : : : | |

## MEMORANDUM

**Brody, J.**                                                                 **June __17___, 2009**

The Plaintiff in this case was defrauded by one of his employees, who conducted all of her fraudulent banking at a particular branch of Wachovia bank, N.A., in Linwood, Pennsylvania. The plaintiff seeks to hold Wachovia liable for either negligently, or fraudulently, negotiating the unauthorized checks.  Wachovia moved to dismiss the complaint, and on December 23, 2008, I granted in part and denied in part Wachovia's motion.  On December 31, 2008, the plaintiff filed an amended complaint, and Wachovia moved to dismiss certain counts of the amended complaint.  The renewed motion to dismiss is granted in part and denied in part, as follows.

## I.      Factual Background[1]

Plaintiff Ralph S. Bucci ("Bucci") founded his Environmental Equipment & Service Company ("EES") as a sole proprietorship in 1973.  EES distributes water and sewage treatment equipment to municipalities.  In 1980, Bucci hired Elizabeth Greenawalt ("Greenawalt") to perform bookkeeping and secretarial duties for the company.  Greenawalt was charged with

---

[1] Unless otherwise noted, the facts are taken from the Amended Complaint.

preparing checks payable to creditors for Bucci to review and sign, and maintaining the company's financial records.[2]  She was also responsible for making weekly trips to the Linwood branch of Wachovia in Linwood, Pennsylvania (the "Linwood Wachovia") to conduct financial activities on behalf of EES, such as depositing checks.[3]

Bucci did all of his business and personal banking at the Linwood Wachovia from 1985 until December 2006, and he was known to the employees at the Linwood branch as the principal of EES.  Likewise, Greenawalt was known to be the bookkeeper of EES.  The employees at the Linwood branch also knew that Ralph Bucci and Stephen Bucci (Ralph's son and co-principal of EES), were the only persons authorized to sign checks on behalf of EES.[4]

Greenawalt worked faithfully for EES for 13 years, conducting regular business at the Linwood Wachovia on behalf of EES.  In late 1997 when Greenawalt allegedly began stealing money from EES by altering checks and altering the company's financial records to conceal her fraudulent activities.  She endorsed and cashed checks made payable to AWHD, a web design company operated by her son that was a legitimate creditor of EES, but for which she was not an authorized signatory.  She also presented EES checks made payable to "Cash" and negotiated them at the Linwood Wachovia.  From 1998 through 2006, Greenawalt wrongfully negotiated over $925,000.00 in altered checks from EES, all of which were cashed or deposited at the

_____

[2] The company's financial records were initially maintained in handwritten ledgers, and eventually the system was computerized in Quickbooks format.

[3] EES began banking at the Linwood Wachovia in 1985, after EES relocated from Glenolden to Marcus Hook, Pennsylvania.  The Linwood Wachovia closed in December 2006.

[4] EES maintained multiple accounts at Wachovia, including a checking account maintained in a Wachovia Securities brokerage account (the "CAP" account) that was opened in the 1990s.

Linwood Wachovia.  These activities were drastically different from the regular banking activities she had conducted on behalf of EES for the previous thirteen years.  Thus, Bucci alleges that one or more of Wachovia's employees knew that Greenawalt was perpetrating a long term fraudulent embezzlement scheme, and aided her in defrauding Bucci and EES.

Bucci himself did not begin to suspect that Greenawalt was defrauding EES until October 31, 2006.  At that time, he spoke with a teller who confirmed that Greenawalt was routinely cashing checks from EES.  He advised that teller that she was not authorized to do so.  The next day, November 1, 2006, Bucci advised Wachovia's branch manger that Greenawalt had been cashing checks without his authorization.  On November 2, 2006, Bucci confronted Greenawalt and she admitted to stealing money by altering checks.  Greenawalt was subsequently arrested and is currently facing criminal prosecution in Delaware County, Pennsylvania.  On August 29, 2007, Bucci contacted the Loss Management department at Wachovia to report the fraudulent scheme.  Wachovia disclaimed liability for any of Bucci's losses in a letter dated the same day.

On February 25, 2008, Bucci filed suit against Wachovia alleging that, by permitting Greenawalt to improperly cash hundreds of checks containing obvious alterations, Wachovia was fraudulently or negligently complicit in Greenawalt's scheme.

On December 23, 2008, I granted in part and denied in part Wachovia's motion to dismiss the plaintiff's complaint.  I dismissed for failure to state a claim upon which relief can be granted plaintiff's claims for conversion, negligent misrepresentation, constructive fraud, fraud, and violation of the Pennsylvania Commercial Code, 13 Pa. C.S.A. § 3307.  I also found that plaintiffs claims under 13 Pa. C.S.A. § 3406 and 13 Pa. C.S.A § 4401 were partially barred by the statute of limitations.  Plaintiff's claims for negligence, breach of contract, breach of duty of

good faith and fair dealing, aiding and abetting, violation of 13 Pa. C.S.A § 4406, and violation of the Uniform Fiduciaries Act, 7 P.S. § 6351 *et seq.*, remained in the complaint.

On December 31, 2008, Bucci filed an Amended Complaint (Doc. #35).[5]  The Amended Complaint reasserts claims for fraud (Am. Count II), constructive fraud (Am. Count III), negligent misrepresentation (Am. Count IV), violation of 13 Pa. C.S.A. § 3307 (Am. Count VII), violation of 13 Pa. C.S.A. § 3406 (Am. Count VIII), and violation of 13 Pa. C.S.A § 4401 (Am. Count IX).   In addition the Amended Complaint still contains claims for negligence, breach of contract, breach of duty of good faith and fair dealing, aiding and abetting, violation of 13 Pa. C.S.A § 4406, and violation fo 7 P.S. § 6351 *et seq.*, (Am. Counts I, V, VI, XI, X, and XII, respectively).

On January 26, 2009, Wachovia moved to dismiss Plaintiff's amended fraud, constructive fraud, negligent misrepresentation, aiding and abetting, and Uniform Fiduciaries Act claims (Am. Counts II, III, IV, XI, and XII) and to dismiss in part amended counts VII, VIII, IX, and X (violations of 13 Pa. C.S.A. §§ 3307(b), 3406, 4401 and 4406), as barred by the statute of limitations with respect to all checks processed by Wachovia before February 25, 2005.

## II.    Fed. R. Civ. P. 12(b)(6) Legal Standard

To survive a 12(b)(6) motion to dismiss, the claimant must "set forth sufficient

---

[5] Wachovia is correct that the Plaintiff erroneously filed their amended complaint without seeking leave of the court. Fed. R. Civ. P. 15(2); see also Smith v. National Collegiate Athletic Ass'n, 139 F.3d 180, 189 (3d Cir. 1998) ("After the district court enters judgment on a motion to dismiss, a plaintiff no longer may amend her complaint as of right.").  However, Rule 15 states that permission to amend should be given "freely" when justice requires, and the Third Circuit has held that leave to amend "should be routinely granted to plaintiffs."  Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J., 907 F.2d 1408, 1417 (3d Cir. 1990).  I treat Plaintiff's filing of an Amended Complaint as a request for leave to do so, and I grant that request.  Id.

information to outline the elements of the claims or to permit inferences to be drawn that these

elements exist." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). This means the plaintiff

must plead facts sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp.

v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). The factual claims must be accepted as true and

viewed in the light most favorable to the plaintiff, but a court is not bound to accept as true

unsupported conclusions or conclusory allegations. In re Tower Air, Inc., 416 F.3d 229, 236 (3d

Cir. 2005); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). A motion to

dismiss should be granted under Rule 12(b)(6) if the moving party has established that the

plaintiff would not be entitled to relief under any reasonable reading of the complaint. Brown v.

Card Service Center, 464 F.3d 450, 452 (3d Cir. 2006).

**III.    Discussion**

A.    Plaintiff has Failed to State a Claim for Fraud (Am. Count II), Constructive Fraud (Am. Count III), and Negligent Misrepresentation (Am. Count IV)[6]

Bucci's original claims for fraud, constructive fraud, and negligent misrepresentation

failed because Bucci had failed to allege that Wachovia had the requisite "duty" to Bucci which

must exist before liability can be imposed under a theory of fraudulent concealment, constructive

fraud, or negligence representation.[7] Bucci's amended complaint contains additional allegations

---

[6] When alleging fraud, plaintiffs are subject to the heightened pleading requirements of Rule 9(b), which requires plaintiffs to "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged." Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004).

[7] See Duquesne Light Co. v. Westinghouse Electric Corp., 66 F. 3d 604, 612 (3d Cir. 1995) ("[A]n omission is actionable as fraud only where there is an independent duty to disclose the omitted information."); Chiarella v. U.S., 445 U.S. 222, 228 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.") As with fraud, to state a claim for constructive fraud, Bucci must be able to allege a relationship between the

which seek to establish a fiduciary relationship between Wachovia and Bucci.  These allegations are that, as long-time customers, Bucci and Greenawalt's banking activities (as well as Bucci and Greenawalt personally), were well know to Wachovia; therefore, when Greenawalt's banking activities changed dramatically in 1997, Wachovia had a duty to inform Bucci that something was amiss.  However, these allegations do not give rise to the duty required to state a claim for fraud, constructive fraud, or negligent misrepresentation.

Third Circuit law is clear that the confidential or fiduciary relationship that triggers the duty to speak arises in limited circumstances.  See Duquesne Light Co. v. Westinghouse Electric Corp., 66 F. 3d 604, 611 (3d Cir. 1995); City of Rome v. Glanton, 958 F. Supp. 1026, 1038 (E.D. Pa. 1997); see also Restatement of Torts (Second) § 551.  The relationship between a customer and a bank "is not a fiduciary one." Waye v. Commonwealth Bank, 846 F. Supp. 321, 326 (M.D. Pa. 1994); see also Temp-Way Corp., v. Continental Bank, 139 B.R. 299, 318 (E.D.Pa. 1992) ("Pennsylvania law follows the well recognized principle that a lender is not a fiduciary of the borrower.").[8]  This principle "stems from the presumption that the relationship between lenders and borrowers is conducted at arms-length and the parties are each acting in their own interest." Id.  However, a fiduciary relationship may arise "if the lender gains substantial control over the borrower's business affairs."  Id.; see also Drapeau v. Joy Technologies, Inc., 670 A.2d 165, 172 (Pa. Super. 1996) (holding that a business association "may be the basis of a confidential

---

parties that would trigger Wachovia's duty to speak.  See Alvarez v. Ins. Co. of North America, No 07-1102, 2008 WL 647784, at *4 (3d Cir. 2008) ("In the absence of a confidential relationship, the constructive fraud claim must fail.").  Negligent misrepresentation also requires a duty owed by one party to another.  Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999).

[8] Although the Plaintiff argues to the contrary, he cites no case in his Reply in Opposition to Defendant's Motion to Dismiss to support his contention.

relationship only if one party surrenders substantial control over some portion of his affairs to the other.").  Bucci's amended complaint does not allege that Wachovia had control over Bucci's business affairs nor does it allege the kind of fiduciary relationship necessary to give rise to a duty on the part of Wachovia.  Thus, Bucci's amended claims for fraud (Am. Count II), constructive fraud (Am. Count III), and negligent misrepresentation (Am. Count IV) fail to state a claim for which relief may be granted and are dismissed with prejudice.

        B.      <u>Amended Counts VII, VIII, IX Are Partially Barred By the Statute of Limitations</u>[9]

A statute of limitations defense may be asserted on a Rule 12(b)(6) motion to dismiss where it is clear from the face of the complaint that the claims are time-barred.  <u>Rycoline Products, Inc. v. C&W Unlimited</u>, 109 F.3d 883, 886 (3d Cir. 1997).  I previously held that Bucci's claims under Pennsylvania Commercial Code sections 3307 (Am. Count VIII), 3406 (Am. Count VIII) and 4401 (Am. Count IX) were partially barred by the three-year limitations period set forth in 13 Pa. C.S.A. §§ 3118(g) and 4111.  I also held that because there was no allegation of fraudulent concealment, there were no grounds to toll the statute of limitations.[10] Bucci's amended complaint alleges that the Linwood Wachovia employees knew that Greenawalt

---

[9] Wachovia also moves to dismiss plaintiff's claim under 13 Pa. C.S.A. § 4406 (Am. Count X) as time-barred.  However, as I previously held, it is unclear from the face of the complaint when or whether certain account information was supplied by Wachovia to Bucci. This information is crucial to a determination of whether all or part of Bucci's claims are time-barred pursuant to 13 Pa. C.S.A. § 4406(f).  Although Bucci may have represented in his pleadings that he received months bank reports, these allegations do not appear in the complaint and are not to be considered by the Court in deciding a motion to dismiss. Because it is not clear from the face of the complaint whether this claim is barred by the statute of limitations, I cannot dismiss or limit this claim on a Rule 12(b)(6) motion to dismiss.

[10] The statute of limitations in commercial transactions may be tolled if the defendant is found guilty of fraudulent concealment.  <u>See</u> <u>Menichini v. Grant</u>, 995 F.2d 1224,1231 (3d Cir. 1993).

was cashing unauthorized checks, permitted her to do so with impunity, and did not inform Bucci of her activities.  Furthermore, Bucci argues that he justifiably relied on Wachovia conforming to standard banking procedures, and that in repeatedly deviating from those procedures without telling him, the bank was fraudulently concealing Greenawalt's activities.  (Am. Compl. ¶¶ 42-43.)

Bucci's allegations still lack allegations of any "affirmative independent act of concealment upon which the plaintiff[] justifiably relied," which is required to state a claim for fraudulent concealment.  Kingston Coal Co. v. Felton Min. Co., Inc., 690 A.2d 284. 291 (Pa. Super. 1997) (holding that a misrepresentation concerning ownership of a mine was not fraud, in part because the buyers were "not excused from their duty to make the proper inquiries regarding their coal estate").  There are no allegations that the bank intentionally or affirmatively withheld or altered account information, or concealed any of Greenawalt's banking activities from Bucci. In fact, when Bucci inquired into Greenawalt's banking practices on October 31, 2006, the teller with whom he spoke "confirmed that Ms. Greenawalt was routinely cashing checks from EES." (Am. Compl. ¶ 45.)  There is no allegation that Bucci made any previous inquiries and received different information from any teller or bank employee.  The claim that Wachovia's employees "deliberately refused to inquire" as to Greenawalt's authority to cash checks, and that they cashed checks for her knowing that they were unauthorized simply does not give rise to a claim that Wachovia fraudulently concealed Greenawalt's activities from Bucci.  Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 433 (Pa. Super. 2003) ("[S]ilence in the absence of a duty to speak cannot suffice to prove fraudulent concealment.").  Bucci has failed to allege grounds to toll the statute of limitations, and therefore Bucci's claims under Code sections 3307, 3406 and 4401

8

(Am. Counts VII, VIII, and IX) are dismissed as to checks negotiated before February 25, 2005, three years before the Complaint was filed.

      C.     <u>Plaintiff has Stated a Claim for Aiding and Abetting</u>

Wachovia argues for the first time in its motion to dismiss the amended complaint that Bucci's aiding and abetting claim must be dismissed for failure to state a claim upon which relief can be granted. Amended Count XI alleges that Wachovia "aided Ms. Greenawalt in breaching her duties as a fiduciary of Bucci." (Am. Compl. ¶ 117). To state a claim against Wachovia for aiding and abetting Greenawalt's breach of fiduciary duty to Bucci, Plaintiff must plead: (1) a breach of a fiduciary duty (by Greenawalt); (2) knowledge of that breach by Wachovia; (3) and substantial assistance or encouragement by Wachovia in effecting that breach. <u>Koken v. Steinberg</u>, 825 A.2d 723, 732 (Pa. Commw. 2003); <u>see also</u> <u>Bair v. Purcell</u>, 500 F.Supp.2d 468, 497 (M.D. Pa. 2007) ("In order to be found liable for aiding and abetting a breach of a fiduciary duty, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach.").

Bucci claims that as a regular and long-time customer of Wachovia, she was known to the tellers as the bookkeeper of EES and someone who regularly conducted banking business on behalf of EES. Greenawalt was also known to conduct regular business on behalf of EES. Bucci further alleges that the Wachovia employees knew that only himself and his son, Ralph, were authorized signatories for the EES accounts. Thus, Wachovia employees substantially assisted her in her breach of duty to Bucci by knowingly or recklessly cashing the unauthorized checks and turning a blind eye to her irregular banking practices. I find that Bucci has pled sufficient

9

facts to state a claim for aiding and abetting a breach of fiduciary duty.

       D.    <u>Plaintiff has Stated a Claim under the UFA</u>

Wachovia also argues for the first time that Bucci's Uniform Fiduciaries Act ("UFA")

claim, 7 Pa. C.S. §§ 6351, *et seq.*, should be dismissed for failure to state a claim.  The purpose

of the UFA is to "facilitate banking transactions by relieving depositories of the responsibility of

seeing that authorized fiduciaries use entrusted funds for proper purposes."  <u>Sonders v. PNC</u>

<u>Bank, N.A.</u>, No. 01-3038, 2003 WL 22310102, at *4 (E.D. Pa. June 3, 2003).  In other words, the

UFA "shields banks from liability when they act honestly in fiduciary relationships, but not when

they wink at obvious irregularities..."  <u>Robinson Protective Alarm Co. v. Bolger & Picker</u>, 512

A.2d 299, 304 (Pa. 1986).  Thus, to state a claim under the UFA, a plaintiff must plead bad faith

on the part of the bank.  <u>Sonders v. PNC Bank, N.A.</u>, No. 01-3083, 2001 WL 1231813, at *1

(E.D. Pa. Oct. 16, 2001).  A bank acts in bad faith where it has "actual knowledge of a

fiduciary's misapplication of funds." 7 Pa. C.S. § 6381; <u>see also</u> <u>Robinson Protective Alarm Co.</u>,

512 A.2d at 304 ("[I]f a bank has knowledge that a fiduciary intends to appropriate trust funds to

his own use, and that to release funds to him will aid in a breach of trust, then the bank will be

held to have acted in 'bad faith'.") (citations omitted).  This is precisely the nature of the

allegations in the complaint: that Wachovia employees knew that Greenawalt was an agent of

EES entrusted with conducting banking business on behalf of EES, and yet Wachovia permitted

her to cash unauthorized and obviously altered checks, knowing she was unauthorized to do so.

<u>See</u> <u>e.g.</u>, <u>Sonders v</u>, 2001 WL 1231813, at *1 (finding that a claim for bath faith had been stated

where the complaint alleged that the bank should have known that the funds were misapplied,

failed to follow signature requirements, and failed to report suspicious banking activities.).  The

Plaintiff's allegations are sufficient to state a claim under the UFA.

**IV.      Conclusion**

Wachovia's motion to dismiss Bucci's amended complaint is granted in part and denied in part.  Bucci's claims for fraud, constructive fraud, and negligent misrepresentation (Am. Counts II, III and IV) are dismissed, with prejudice, for failure to state a claim.  Bucci's claims under 13 Pa. C.S.A. §§ 3307, 3406 and 4401 (Am. Counts VII, VIII, and IX) are dismissed to the extent that they are barred by the applicable statute of limitations, with prejudice.  With respect to Bucci's claims for aiding and abetting (Am. Count XI) and violation of the Uniform Fiduciaries Act, 7 Pa. C.S. §§ 6351, *et seq.*, (Am. Count XII), these claims have been sufficiently pled, and Wachovia's motion to dismiss them is denied.


s/Anita B. Brody

_____

ANITA B. BRODY, J.



Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to: